```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


JAMES BRADLEY WARLOP,

                    Plaintiff,

vs.                                    Case No. 15-2624-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 11, 2013, administrative law judge (ALJ) James Harty issued his decision (R. at 17-33). Plaintiff alleges that he had been disabled since August 13, 2010 (R. at 17). Plaintiff meets the insured status requirements for social security disability benefits through March 31, 2016 (R. at 19).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 19). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 19). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20). After determining plaintiff's RFC (R. at 23), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 32). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 32-33). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 33).

**III. Did the ALJ err in the weight accorded to the various medical and other opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other

medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

6

source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. <u>Watkins</u>, 350 F.3d at 1301.

The ALJ also considered reports from Michael Dreiling, a vocational consultant. Mr. Dreiling is not a medical source. However, evidence from other sources may be used to show the severity of the individual's impairments and how it affects the individual's ability to function. Information from other sources may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. Opinions

7

from non-medical sources who have seen the individual in their professional capacity should be evaluated by using the factors for weighing opinion evidence. An opinion from a non-medical source who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. The ALJ generally should explain the weight given to opinions for these other sources. SSR 06-03p, 2006 WL 2329939 at *2, 5, 6.

This case included opinions from numerous treating medical sources, examining medical sources, and non-examining medical sources who reviewed the medical record. The court will briefly summarize those opinions which were offered after plaintiff's alleged onset date of disability, August 13, 2010. Dr. Edwards, a treating physician, opined on January 31, 2011, September 26, 2011, and December 12, 2012 that plaintiff is unable to work and cannot engage in any occupation that requires any form of pushing, pulling or lifting (R. at 689, 688, 1010). However, Dr. Ebelke, after reviewing plaintiff's chart and the MRI scans ordered by Dr. Edwards, opined on February 28, 2011 that he disagreed with the opinion of Dr. Edwards that plaintiff is unemployable; in particular, he disagreed with the conclusion of Dr. Edwards that plaintiff's condition has the potential to cause serious irreversible neurologic problems (R. at 719).

On February 25, 2011, Dr. Beatty, a treating physician, stated that plaintiff may return to work without restrictions (R. at 671). On November 5, 2011, Dr. Tenny examined plaintiff and provided a report to Dr. Edwards stating that he did not see neurological contraindications for plaintiff returning to employment, and further indicated that plaintiff may have some physical limitations that could be addressed by a functional capacity evaluation (R. at 754-755). On August 6, 2012, Dr. Robbie examined plaintiff and concluded that plaintiff has the ability to sit, stand, walk, lift, carry and handle objects without any observation of limitations (R. at 844-846).

Dr. Koprivica conducted independent medical examinations of plaintiff in 2009 and 2011 and provided numerous reports in regards to a pending workers' compensation claim. On April 25, 2011, he assigned plaintiff a 25% permanent partial disability (R. at 783-803). On October 22, 2011, following receipt of a psychological report from Dr. Schmidt, Dr. Koprivica concluded that plaintiff had an overall 30% permanent partial disability to the body as a whole. At that time, he stated that there may still be an issue of employability, and would defer any of these issues to an appropriate vocational expert (R. at 781-782). On February 5, 2012, after review of the report from Mr. Dreiling, a vocational expert, Dr. Koprivica opined that no employer in the usual course of business would reasonably be expected to

9

employ this individual in his existing physical or emotional condition, and that plaintiff is permanently totally disabled (R. at 779-780). Finally, on February 18, 2013, after review of additional medical and other records, Dr. Koprivica affirmed his earlier opinion that plaintiff was permanently totally disabled (R. at 1011-1013).

On November 15, 2012, Dr. Coleman, a non-examining physician, reviewed the medical files and opinions in the record. He offered an opinion regarding plaintiff's physical RFC, and explained the weight he assigned to other opinions in the record, and provided a detailed summary of the medical evidence (R. at 114-117).

On September 6, 2011, Dr. Schmidt, a psychologist, performed a psychological evaluation on the plaintiff. After reviewing plaintiff's records, and interviewing and testing plaintiff, Dr. Schmidt opined that plaintiff had moderate impairments in activities of daily living, concentration and adaptation, and a mild impairment in social functioning. He found that plaintiff had a 15% psychological disability rating and a GAF score of 55[1] (R. at 673-678).

---

[1] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

10

Dr. Fevurly performed an independent medical examination on July 20, 2012, and reviewed plaintiff's records. Dr. Fevurly concluded that there are no objective factors identified which should physically limit plaintiff from returning to work, but further found that the non-physical factors are going to be difficult to overcome in his pursuit to return to work, and that it is unlikely that he will be able to cope with return to the work force in the near future although physically he is qualified to do so (R. at 979-990). On November 5, 2012, he affirmed his earlier opinion after reading the assessment from Dr. Khalid, stating that plaintiff is disabled as a result of non-physical factors (R. at 975-978).

On November 6, 2012, Dr. Khalid issued a report after performing an independent psychiatric examination on the plaintiff (R. at 998-1004). He reviewed plaintiff's records and interviewed the plaintiff. He found that plaintiff had a GAF of 55-60, with moderate difficulties in psychological, social and occupational areas. He concluded that from a psychiatric standpoint, plaintiff has not been adequately treated, and "does not have serious symptoms to entirely prevent him from a full-time job" (R. at 1004). However, Dr. Khalid opined that plaintiff could decompensate under a stressful work environment

---

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

since his coping strategies are not healthy and his ability to tolerate stress and frustration is pretty limited.  He went on to say that he believed that with aggressive treatment for approximately 6 months he should be able to transition back to work on a part-time basis.  He further indicated that plaintiff is unable to recognize the need for psychological treatment in the management of pain, and that such treatment is needed for 6-8 months (R. at 1004).

On August 16, 2012, Dr. Burstin, a non-examining psychologist, reviewed the medical files and opinions in the record.  He offered an opinion regarding plaintiff's mental RFC (R. at 92-93, 96-98).  On November 14, 2012, Dr. Schulman, a non-examining psychologist, also reviewed the medical files and opinions in the record.  He also offered an opinion regarding plaintiff's mental RFC (R. at 111-113, 118-120).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

However, it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position, while ignoring other evidence.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012); Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).  An ALJ cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.  Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ accorded "some" weight to the opinion of Dr. Khalid; the ALJ indicated that Dr. Khalid opined "that the claimant's psychiatric symptoms and limitations would not entirely prevent him from full-time work," which the ALJ stated is generally consistent with his findings (R. at 29).  Dr. Khalid indicated, in relevant part, the following:

> 3.  Mr. Warlop is also in need of a therapist with pain management background since he is very focused on his pain.  **He is unable to recognize the need for psychological treatment in the management of**

13

> **pain. Such treatment is needed at least for
> six to eight months…**
>
> 4. **From a psychiatric standpoint, he is not
> adequately treated and does not have serious
> symptoms to entirely prevent him from a
> full-time job. He could decompensate under
> a stressful work environment since his
> coping strategies are not healthy and his
> ability to tolerate stress and frustration
> is pretty limited. I do believe that with
> aggressive treatment for approximately 6
> months he should be able to transition back
> to work on a part-time basis**.

(R. at 1004, emphasis added).

The opinion of Dr. Khalid is ambiguous, unclear and possibly contradictory. He states that plaintiff is not adequately treated, but then states that he does not have serious symptoms to entirely prevent him from a full-time job. Next, Dr. Khalid states that plaintiff could decompensate under a stressful work environment (because his coping strategies are not healthy and his ability to tolerate stress and frustration is pretty limited), but that with aggressive treatment for approximately 6 months, he should be able to work on a part-time basis. He did not indicate if, or in the alternative, how long it would take for him to work on a full-time basis. Furthermore, Dr. Khalid had previously noted that plaintiff is unable to recognize the need for psychological treatment in the management of pain. Therefore, it is not at all clear whether Dr. Khalid opined that plaintiff could engage in full-time work

14

at the time of the evaluation.  The ALJ erred by only mentioning a portion of the opinion that would support a finding of non-disability, while failing to even mention those portions of his opinion which raise serious questions about plaintiff's ability to engage in full-time employment.[2]  The ALJ cannot ignore those portions of Dr. Khalid's report which are unfavorable to the ALJ's findings.

Dr. Fevurly, on July 25, 2012, opined that there are no objective factors identified during the assessment which should physically limit him from returning to work although the non-physical factors are going to be difficult to overcome in his pursuit to return to work.  He went on to say that, after noting his chronic pain behaviors, it is unlikely that he will be able to cope with return to the work force in the near future although physically he is qualified to do so (R. at 990).  Dr. Fevurly, on November 5, 2012, after reviewing the report from Dr. Khalid, stated that this information did not change his original assessment (R. at 975), and further stated:

> There is minimal likelihood that intensive psychotherapy or psychiatric medications will improve his subjective complaints or functional status.  His personality disorder and limited insight to his maladaptive pain behaviors makes it unlikely that any therapeutic intervention will improve his

---

[2] At step five, the ALJ must show that plaintiff has the ability to work on a regular and continuing basis, which means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184 at 1, 2 and n.2.

15

>     status; in fact, aggressive intervention is
>     more likely to be harmful than beneficial.

(R. at 977).

The ALJ discussed the opinions of Dr. Fevurly, noting his reliance on the opinions of Dr. Khalid. The ALJ noted that there is no evidence that Dr. Fevurly is a trained psychiatrist (R. at 29).[3] The ALJ then stated that Dr. Khalid did not opine that he had disabling mental limitations (R. at 29). However, the ALJ failed to mention that Dr. Khalid had also stated that plaintiff could decompensate under stress, and that only after aggressive treatment for approximately 6 months would he be able to transition back to work on a part-time basis, and further that plaintiff was unable to recognize the need for psychological treatment in the management of pain.

The ALJ, after referencing only a limited portion of the opinions of Dr. Khalid, gave the opinions of Dr. Fevurly little weight because of their lack of consistency with the evidence. However, Dr. Fevurly's opinions are not clearly inconsistent with the entirely of the opinions as expressed by Dr. Khalid.

The ALJ gave "great weight" to the opinions of two non-examining medical sources, Dr. Burstin and Dr. Schulman in regards to plaintiff's psychological limitations. The ALJ

---

[3] According to the regulations, a physician can provide medical opinions regarding a claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). A physician may give an opinion regarding a patient's mental state even though not a psychiatrist; the fact that a physician is not a specialist does not affect the admissibility of the opinion, but does affect the weight given to the opinion. Quinton v. Farmland Industries, Inc., 928 F.2d 335, 337 (10th Cir. 1991).

asserted that the their findings are "fully consistent" with the evidence of record as discussed in the decision (R. at 30). However, their opinions are not fully consistent with the entirety of the report of Dr. Khalid, which the ALJ failed to mention. Nor are their opinions consistent with the report of Dr. Fevurly, who affirmed his earlier opinion after reading Dr. Khalid's report.

Non-examining medical sources, as noted above, are generally entitled to the least weight. Furthermore, their opinions are entirely dependent on the information provided to them. There is no indication in the record that either Dr. Burstin or Dr. Schulman had before them either the opinions of Dr. Khalid or Dr. Fevurly. The agency file sets forth the medical evidence that was presented to them, and at no time did it indicate that they examined or considered the opinions from either Dr. Khalid or Dr. Fevurly (R. at 87-100, 102-122). The ALJ clearly erred by cherry-picking the report from Dr. Khalid, and then relying on two non-examining medical sources who did not see the opinions expressed by Dr. Khalid or Dr. Fevurly.

The court would further point out that the opinion of Dr. Khalid, which raise serious questions about plaintiff's ability to work on a full-time basis due to mental limitations, and Dr. Fevurly, who opined that plaintiff is disabled due to mental limitations, are supported by the opinions of Dr. Koprivica, who

17

opined that plaintiff is disabled due to physical and/or psychological difficulties (R. at 779-780, 1011-1013). They are also supported by the report of the vocational consultant, Michael Dreiling, who opined that, although plaintiff is physically capable of light work, he is not employable when factoring in his psychological issues (R. at 272-284, 285-288). As noted above, the opinion of a vocational consultant is an "other" opinion that should be considered in accordance with SSR 06-03p. On remand, the ALJ must not consider the opinions of the medical and other examining sources in isolation, but their opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of all of the medical and other examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of all of the medical and other sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

**IV.  Other issues raised by the parties**

Plaintiff also alleges error by the ALJ in his credibility analysis and in his RFC findings. The court will not address these issues because they may be affected by the ALJ's

resolution of the case on remand after giving proper consideration to the medical and other examining opinions noted above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 16th day of March 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge